UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ECOLOGICAL RIGHTS FOUNDATION,

              Plaintiff,

      v.

FEDERAL EMERGENCY
MANAGEMENT AGENCY, et al.,

              Defendants.

Case No.  15-cv-04068-DMR

**ORDER ON JOINT DISCOVERY LETTER**

Re: Dkt. No. 34

        The parties filed a joint discovery letter in which Defendant Federal Emergency Management Agency ("FEMA") seeks clawback of three documents inadvertently produced to Plaintiff Ecological Rights Foundation in response to a Freedom of Information Act ("FOIA") request.  [Docket No. 34 (Jt. Letter).]  This matter is appropriate for resolution without a hearing pursuant to Civil Local Rule 7-1(b).  For the following reasons, Defendant's motion is denied.

**I.        BACKGROUND**

        Plaintiff filed this action on September 5, 2015, seeking declaratory and injunctive relief under FOIA, 5 U.S.C. § 552(a)(4)(B).  Plaintiff challenged FEMA's response to its June 8, 2015 request for

> all documents addressing Endangered Species Act ("ESA") section 7 consultations (16 U.S.C. § 1536) that have been initiated or proposed pertaining to the implementation of the National Flood Insurance Program ("NFIP") in California; all documents concerning any ESA section 10 permits or habitat conservation plans (16 U.S.C. § 1539) that have been initiated or proposed, pertaining to the implementation of the NFIP in California; and all documents submitted to FEMA by [the National Marine Fisheries Service], [U.S. Fish and Wildlife Service], the [California Department of Fish and Wildlife], or any other State or Federal agency or department pertaining to the ESA and the implementation of the NFIP in California.

Compl. ¶ 15.

        By way of background, section 7(a)(2) of the Endangered Species Act, 16 U.S.C. §

United States District Court
Northern District of California

United States District Court
Northern District of California

1536(a)(2), which the Ninth Circuit has described as "[t]he heart" of the Act, requires all federal agencies to "'insure that any action authorized, funded, or carried out' by the agency 'is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species.'" *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 495 (9th Cir. 2010) (quoting 16 U.S.C. § 1536(a)(2)); *Nat. Res. Def. Council v. Houston*, 146 F.3d 1118, 1125 (9th Cir. 1998). "To carry out this substantive mandate, agencies must engage in a consultation process with the appropriate expert wildlife agency on the effects of any federal action to listed species." *Cal. ex. rel. Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999, 1018 (9th Cir. 2009). "After the formal consultation is completed, the relevant Service will issue a Biological Opinion evaluating the nature and extent of effect on the threatened or endangered species. If the Biological Opinion concludes that the proposed action is likely to jeopardize a protected species, the agency must modify its proposal." *Nat. Res. Def. Council*, 146 F.3d at 1125.

Plaintiff is a public interest environmental organization. According to Plaintiff, the requested documents "are of vital importance to the public to understand how the National Flood Insurance Program, which can have an enormous impact on development in floodplains and on wildlife habitat, is fulfilling its obligations under the [Endangered Species Act]." Compl. ¶ 15. Plaintiff alleges that it "is concerned that since a number of federal courts have already held that FEMA had failed to properly consult with National Marine Fisheries Service ("NMFS") or [U.S. Fish and Wildlife Service] over the [National Flood Insurance Program], that FEMA has not fulfilled its requirements under the [Endangered Species Act] in California." *Id*. Plaintiff made its FOIA request "to learn more about whether the required consultations between FEMA and the National Marine Fisheries Service and/or U.S. Fish and Wildlife Service have occurred over the [National Flood Insurance Program]." [Docket No. 19 (Dec. 9, 2015 Jt. CMC Statement at 2).] In its complaint, Plaintiff alleges that FEMA failed to provide a final determination concerning the June 8, 2015 request within statutory or regulatory time limits and failed to promptly release documents that are responsive to the request. Compl. ¶¶ 17, 37, 38.

On October 19, 2015, Defendant sent its first interim FOIA response and release of

2

United States District Court
Northern District of California

documents to Plaintiff.  Jt. Letter at 1.  It reviewed 445 pages and determined that 213 pages were "entirely releasable," and that portions of 204 pages were exempt from disclosure.  *Id.*  In this discovery dispute, Defendant states that it "inadvertently" produced the following three documents to Plaintiff: 1) a letter dated July 6, 2015; 2) a letter dated August 25, 2016; and 3) a June 2015 email chain.  *Id.*  Defendant does not state when it produced the three documents to Plaintiff, but asserts that it first learned of the inadvertent production on March 11, 2016.  Defendant requested clawback nine business days later.  *Id.* Ex. 1 (Mar. 24, 2016 letter to Plaintiff seeking clawback).  According to Defendant, the three documents are protected from release by FOIA Exemption 5.  It asks the court to order Plaintiff to destroy all copies of the documents in its possession and refrain from using any information contained therein, as well as "take reasonable steps to retrieve" all copies of the documents that Plaintiff has disseminated to third parties.  Jt. Letter at 3.[1]

The parties jointly lodged the three documents for in camera review pursuant to court order.  [Docket No. 32.]  Plaintiff also filed an administrative motion for leave to file four additional exhibits in support of its position, which Defendant does not oppose.  [Docket Nos. 35, 36.]  On November 22, 2016, the court ordered the parties to submit supplemental briefing addressing whether the attorney-client privilege and/or the attorney work product doctrine applies to the June 2015 email chain.  [Docket No. 45.]  The parties timely filed the requested briefing.  [Docket Nos. 46 (Def.'s Brief), 51 (Pl.'s Brief).]

## II.     DISCUSSION

### A.     Whether the Court Has Authority to Order Plaintiff to Return the Documents

As a threshold issue, the parties dispute whether the court may order the requested relief.  Defendant argues that the court has the inherent authority to order the requested relief to prevent Plaintiff "from irresponsibly retaining documents that are exempt, were produced inadvertently, and that FEMA acted promptly to claw back."  Jt. Letter 2.  It notes that Federal Rule of Civil Procedure 26(b)(5)(B)[2] provides for the return of privileged or attorney work product produced in

---

[1] After filing the instant letter, the parties settled the action and stipulated to dismissal of all claims except for this dispute.  [Docket No. 42.]

[2] Under Rule 26(b)(5)(B), "[i]f information produced in discovery is subject to a claim of privilege

3

discovery, and asks the court to apply the same in these circumstances.  Plaintiff argues that clawback is not available in these circumstances.  Since the documents at issue were released under FOIA rather than produced in discovery, Plaintiff argues that FOIA governs this matter, not the Federal Rules of Civil Procedure.

In support of its position, Defendant cites three cases in which courts ordered a receiving party to destroy or return copies of documents inadvertently produced in response to a FOIA request.  In *Hersh & Hersh v. U.S. Department of Health & Human Services*, No. C 06-4234 PJH, 2008 WL 901539, at *9 (N.D. Cal. Mar. 31, 2008), the court ordered the plaintiff to return two FOIA productions that were later superseded and which contained inadvertently produced documents.  In *ACLU v. Department of Defense*, No. 09 Civ. 08071 (BSJ) (FM), slip. op. at 13-15 (S.D.N.Y. Mar. 20, 2012), the court, citing its inherent authority and *Hersh*, ordered the plaintiffs to return a classified document that had been inadvertently produced by the producing agency. The document had been part of a production made in accordance with a court-supervised FOIA response.  Finally, in *Kielty v. FEMA*, No. 14-CV-3269 (PGS)(LHG), slip. op. (D.N.J. Dec. 8, 2014), the court ordered the plaintiff to destroy or return all copies of information that was inadvertently produced in response to his FOIA request and enjoined his use of the information for any purpose unless it was disclosed under FOIA or by court order.  Plaintiff attempts to distinguish these cases, arguing that *Hersh* and *Kielty* are conclusory, and that *ACLU* is distinguishable because the production occurred pursuant to a court-ordered process.  However, all three cases support the conclusion that the court may exercise its inherent powers to order the return of the documents if they are protected from release under an applicable FOIA exemption. *See also Long v. U.S. IRS*, 693 F.2d 907, 909 (9th Cir. 1982) (describing courts as the "enforcement arm of the FOIA").  Accordingly, the court will analyze whether the documents are

or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if it disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.  The producing party must preserve the information until the claim is resolved."

exempted from disclosure under FOIA.

### B.    Exemption 5

Defendant contends that the three documents are protected from release by FOIA Exemption 5. Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "The exemption is 'cast in terms of discovery law,'" and thus covers the deliberative process privilege, the attorney-client privilege, and the attorney work product doctrine. *Maricopa Audubon Soc'y v. U.S. Forest Serv*., 108 F.3d 1089, 1092 (9th Cir. 1997) (citations omitted).

Defendant argues that all three documents are protected by the deliberative process privilege. It also asserts that parts of the third document, the June 2015 email chain, are protected by the attorney-client privilege and attorney work product doctrine.

### 1.    Deliberative Process Privilege

#### a.  Legal Standard

The deliberative process privilege "permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *FTC v. Warner Commc'ns Inc*., 742 F.2d 1156, 1161 (9th Cir. 1984). The privilege is designed to "promote frank and independent discussion among those responsible for making governmental decisions," *id*., and the "ultimate purpose" of the privilege is to "prevent injury to the quality of agency decisions." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).

For a document to qualify for exemption 5 under the deliberative process privilege, it must be both "predecisional" and "deliberative." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988). Predecisional means that the document was "antecedent to the adoption of agency policy." *Id*. Deliberative means that the document "must actually be related to the process by which policies are formulated." *Nat'l Wildlife Fed'n*, 861 F.2d at 1117. This dual requirement reflects the privilege's purpose of protecting the deliberative process leading up to decisions. *Id*. "Purely factual material that does not reflect deliberative processes is not

protected." *FTC*, 742 F.2d at 1161.

Because the deliberative process is "so dependent upon the individual document and the role it plays in the administrative process[,] [t]he agency must establish what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Elec. Frontier Found. v. CIA*, No. C 09-3351 SBA, 2013 WL 5443048, at *12 (N.D. Cal. Sept. 30, 2013) (quoting *Animal Legal Def. Fund, Inc. v. Dep't of Air Force*, 44 F. Supp. 2d 295, 299 (D.D.C. 1999) (quotation omitted) and *Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 585-86 (D.C. Cir. 1987)).  The agency must also "describe the nature of the decision making authority vested in the office or person issuing the disputed documents, and the positions in the chain of command of the parties to the documents." *Id*. (citing *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982)).

The burden of establishing application of the privilege is on the party asserting it.  *North Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003).  "Because FOIA's purpose is to encourage disclosure, its exemptions are to be narrowly construed." *Carter*, 307 F.3d at 1088.

### b.  Analysis

The first document is a two-page letter dated July 6, 2015 with an attachment from Donna S. Wieting, Director, Office of Protected Resources, NMFS, to Michael Grimm, Acting Assistant Administrator for Mitigation with FEMA (the "NMFS letter").  NMFS Letter, 149-153.  In the letter, on behalf of NMFS, Wieting objects to a FEMA draft rule for the National Flood Insurance Program, expressing the concern that the proposed rule fails to protect endangered species critical habitat.  She states NMFS's position that it is "premature to concur on this draft rule" until NMFS is able to review FEMA's biological evaluation and complete its own "biological opinion pursuant to Section 7 of the Endangered Species Act." *Id*. at 149.  She also states that the NMFS had previously identified necessary changes to the proposed rule which had not been incorporated into the draft rule, and encloses a three-page attachment containing additional comments on the draft rule. *Id*. at 151-53.  In the attachment, the NMFS asserts its position that "FEMA . . . must consult with NMFS under Section 7(a)(2)" regarding the National Flood Insurance Program. *Id*. at 151

United States District Court
Northern District of California

("NMFS should conduct an [Endangered Species Act] [section 7(a)(2)] consultation for this project . . .").

The second document is an August 25, 2015 letter with an attachment from FEMA's Grimm to Wieting in response to Wieting's July 6, 2015 letter (the "FEMA letter").  FEMA Letter, 175-184.  In response to Wieting's statement that it would be premature for NMFS to concur on the draft rule, Grimm states, "FEMA wishes to clarify that it is not seeking to undertake consultation on the proposed rule per se."  *Id*. at 175.  He also informs Wieting that FEMA has concluded that it lacks authority to enact the NMFS's requested changes to the proposed rule.  *Id*. at 177-179.  The five-page attachment to Grimm's letter is entitled, "Limitations on FEMA's Legal Authority and the Scope of the Proposed Action: Supporting Law and Analysis."  *Id*. at 180-84.

The third and final document is a June 2015 email chain consisting of nine emails between several FEMA employees.  Email chain, 212-215.  Plaintiff asserts that the emails "discuss FEMA's position that it lacks authority to enforce the Endangered Species Act (ESA) and that, while due to certain 'litigation outcomes and settlements' it must ensure its National Flood Insurance Program (NFIP) complies with the Endangered Species Act in some areas, its position remains that it is not otherwise required to engage in ESA § 7 consultations and will not with respect to a proposed rule modifying the NFIP."  Jt. Letter at 3.  Defendant does not dispute this characterization of the email chain.

According to Defendant, all three documents are protected by the deliberative process privilege.  It does not address how each individual document falls within the privilege, instead arguing that all three documents are "predecisional, in that they involve FEMA's ongoing, unresolved deliberations with NMFS and internally over the development of a *proposed* rule."  Jt. Letter at 2 (emphasis in original).  Defendant further asserts that the documents are "deliberative, as they are part of the consultation process by which FEMA externally and internally deliberates and seeks guidance regarding its interpretation of and compliance with the Endangered Species Act."  *Id*.  It provides no additional context for the communications at issue.

Defendant's showing is insufficiently specific to establish the deliberative process

privilege as to any of the three documents.  As noted, "[b]ecause the deliberative process is "so dependent upon the individual document and the role it plays in the administrative process[,] [t]he agency must establish what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Elec. Frontier Foundation*, 2013 WL 5443048.  Further, Defendant must "describe the nature of the decision making authority vested in the office or person issuing the disputed documents, and the positions in the chain of command of the parties to the documents." *Id*.  While Defendant identifies the deliberative process at issue—the development of a proposed FEMA rule for the National Flood Insurance Program—it does not provide basic context and information about the documents at issue, such as a description of the individuals involved in authoring the documents and emails, their roles within their respective agencies, or their roles in the rulemaking process.  Defendant also does not explain the relationship between the two agencies communicating about FEMA's draft rule nor does it describe how these documents played a role in the deliberative process it has identified.  FEMA operates under the Department of Homeland Security, while NMFS operates under the Department of Commerce.  It is entirely unclear whether NMFS has any official role in FEMA's rulemaking process.

Without the benefit of necessary context, the court is left to guess about the nature of the correspondence between NMFS and FEMA.  On their faces, the letters seem to stake out each agency's official position on a controversial issue: namely, whether FEMA is legally obligated to engage in a section 7(a)(2) consultation with NMFS pursuant to the Endangered Species Act as part of FEMA's rulemaking process regarding the National Flood Insurance Program.  FEMA says it is not legally obligated to do so; NMFS says that FEMA is.  This does not appear to be predecisional, because the letters convey each agency's official policy to the other agency.  A document is predecisional if it was "prepared in order to assist an agency decisionmaker in arriving at his decision," and includes "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Maricopa Audubon Soc'y*, 108 F.3d at 1093.  "Exemption 5 does not protect . . . communications that promulgate or implement an established policy of an

8

agency." *Brinton v. Dep't of State*, 636 F.2d 600, 605 (D.C. Cir. 1980).

The letters also do not appear to be deliberative. A document is deemed "deliberative" if "it reflects the give-and-take of the consultative process," *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 151 (D.C. Cir. 2006) (citation omitted), and is "part of the 'deliberative process,' if 'the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Maricopa Audubon Soc'y*, 108 F.3d at 1093 (quotation omitted). Defendant does not explain how the NMFS and FEMA letters reflect the "give-and-take" of the consultative process or reflect FEMA's decisionmaking process in a way that would undermine the agency.[3]

As to the June 2015 email chain, the emails reflect an internal FEMA discussion about whether FEMA must engage in Endangered Species Act section 7 consultations. It is not clear whether this discussion relates to the proposed rule discussed in the NMFS and FEMA letters, and Defendant does not "'pinpoint an agency decision or policy to which the document contributed,' or identify a decisionmaking process" to which the email chain contributed. *See Judicial Watch, Inc. v. U.S. Postal Service*, 297 F. Supp. 2d 252, 259 (D.D.C. 2004) (citations omitted). The Ninth Circuit has held that "an agency may not satisfy its burden of proof simply by producing the withheld materials for *in camera* review." *Maricopa Audubon Soc'y*, 108 F.3d at 1093, 1093 n.1 ("the district court's inspection prerogative is not a substitute for the government's burden of proof." (quotation omitted)). By failing to provide basic information about the deliberative process at issue, and the role played by the specific documents, Defendant cannot meet its burden of establishing that the deliberative process privilege protects any of the three documents.

### 2.    Attorney Client Privilege and Work Product Doctrine

Defendant also asserts that the bulk of the June 2015 email chain is protected by the

---

[3] The court also notes that the FEMA and NMFS letters were apparently published online by NMFS, (Jt. Letter at 4), indicating that NMFS was not concerned that the disseminating the communications would undermine the goal of promoting "frank and independent discussion" between the two agencies.

attorney-client privilege and attorney work product doctrine.  The email chain consists of nine emails between FEMA employees, with the first email in the chain sent on June 11, 2015 at 1:45 pm and the last, most recent email sent on June 12, 2015 at 2:38 pm.  In supplemental briefing, FEMA clarifies its position that the attorney-client privilege and work product doctrine apply to only the seven most recent emails in the chain (the third through ninth emails).  It no longer contends that the first two emails in the chain (sent June 11, 2015 at 1:45 pm and June 11, 2015 at 4:51 pm) are protected by the attorney-client privilege and work product doctrine.[4]

### a.  Legal Standards

The attorney-client privilege protects from discovery "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice."  *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted).  The privilege, which is narrowly construed, *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126 (9th Cir. 2012), attaches when:

> (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Richey*, 632 F.3d at 566 (brackets and citation omitted).

The fact "[t]hat a person is a lawyer does not, *ipso facto*, make all communications with that person privileged."  *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996).  "The privilege does not allow an agency to withhold a document or portions thereof merely because it is a communication between the agency and its lawyers."  *Elec. Frontier Found.*, 2013 WL 5443048, at *16.  Rather, "the agency must show that it supplied information to its lawyers with the expectation of secrecy and the information was not known by or disclosed to any third party."  *Id.*

The work product doctrine shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed.

---

[4] Defendant also apparently abandoned its claim that the first two emails in the chain are protected by the deliberative process privilege.  *See* Def.'s Brief at 2 ("Defendant would not object to producing the first two emails in the chain (i.e., the last two emails on Page 215).

1    R. Civ. P. 26(b)(3)(A).  The doctrine aims to balance the "promotion of an attorney's preparation

2    in representing a client" and "society's general interest in revealing all true and material facts to

3    the resolution of a dispute." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1375 (Fed. Cir.2007)

4    (citation and quotation marks omitted).

5        **b.  Analysis**

6            **i.   The Privileged Status of the June 2015 Email Chain**

7            In response to the court's order for supplemental briefing, Defendant submitted a

8    declaration by Amy Weinhouse, an "Attorney-Advisor" in the Flood Insurance and Mitigation

9    Legal Division of FEMA's Office of Chief Counsel ("OCC").  [Docket No. 47 (Weinhouse Decl.,

10   Dec. 5, 2016) ¶ 1.]  She explains that in the second email in the chain, a FEMA employee named

11   G. Morgan Griffin seeks clarification about his role in an internal process.  In the third email in the

12   chain, dated June 11, 2015 at 1:54 pm, FEMA's Michael Nakagaki responded to Griffin's question

13   by stating "[w]e will coordinate our conversation with OCC here" and copying Weinhouse.

14   Weinhouse asserts that starting with Nakagaki's 1:54 pm email, legal advice was being sought

15   from the OCC.  Weinhouse Decl. ¶¶ 3, 4.  What follows includes an email from Weinhouse that

16   she states includes legal advice and an ensuing email "conversation" between Griffin, Nakagaki,

17   Weinhouse and others.  *Id.* at ¶ 4.  Weinhouse states that the information discussed "was not

18   known by or disclosed to any third party until the email chain was inadvertently produced to

19   Plaintiff."  *Id.* at ¶ 6.

20           Upon careful review of the email chain and the Weinhouse declaration, the court finds that

21   Defendant has satisfied its burden to demonstrate that the most recent seven emails in the June

22   2015 email chain are attorney-client privileged communications.  The chain involves

23   communications sent between FEMA employees, including an OCC attorney, which were made

24   for the purpose of obtaining legal advice about FEMA's Endangered Species Act section 7

25   consultations.  *See Richey*, 632 F.3d at 566.

26           **ii.  Waiver**

27           Notwithstanding the court's conclusion that the most recent seven emails in the June 2015

28   email chain contain privileged communications, the court must determine whether FEMA waived

United States District Court
Northern District of California

11

1  its claim of privilege.  Plaintiff argues that FEMA waived privilege for the June 2015 email chain

2  (as well as for the NMFS and FEMA letters), because it produced the document in October 2015

3  but did not request clawback until March 2016, over five months later.

4       "As with all evidentiary privileges, the burden of proving that the attorney-client privilege

5  applies rests not with the party contesting the privilege, but with the party asserting it.  One of the

6  elements that the asserting party must prove is that it has not waived the privilege." *Weil v.*

7  *Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) (internal citations

8  omitted).  "'[I]nadvertence' of disclosure does not as a matter of law prevent the occurrence of

9  waiver." *Id.* at 24.  However, inadvertent disclosure does not constitute a waiver of the attorney-

10 client privilege or work product doctrine if:

11      (1) the disclosure is inadvertent;

12      (2) the holder of the privilege or protection took reasonable steps to
         prevent disclosure; and

13

14      (3) the holder promptly took reasonable steps to rectify the error,
         including (if applicable) following Federal Rule of Civil Procedure
         26(b)(5)(B).

15

16 Fed. R. Evid. 502(b).[5]

17      Here, Plaintiff does not dispute that the disclosure of the June 2015 email chain in

18 Defendant's October 19, 2015 FOIA production was inadvertent, satisfying the first factor of the

19 test.  As to the remaining factors, Defendant states only that it discovered the inadvertent

20 production on March 11, 2016 and requested clawback on March 24, 2016, nine business days

21 later.  Jt. Letter at 1, Ex. 1.  Defendant is silent as to whether it took any "reasonable steps to

22 prevent disclosure" of privileged information and does not identify any precautions it took to

23

24 [5] Federal Rule of Evidence 502(b) applies to inadvertent disclosures "made in a federal proceeding
   or to a federal office or agency."  Fed. R. Evid. 502(b).  The parties did not brief the waiver
25 standard applicable in this context, where Defendant inadvertently disclosed documents in
   connection with a FOIA release, outside the usual discovery process.  However, since Defendant
26 contends that all of the documents at issue are protected from release by FOIA Exemption 5,
   which "is 'cast in terms of discovery law,'" *Maricopa Audubon Soc'y*, 108 F.3d at 1092, the court
27 finds it appropriate to analyze the issue of waiver under Rule 502(b).  Moreover, in its March 24,
   2016 letter advising Plaintiff of the inadvertent production, Defendant sought clawback of the
28 documents pursuant to Rule 502(b).  Jt. Letter Ex. 1.

1    prevent such disclosure.  It provides no information about the initial inadvertent production or its

2    discovery thereof, such as a description of any time constraints it faced in responding to Plaintiff's

3    FOIA request or the number of documents it reviewed in order to respond to the request.  *See* Fed.

4    R. Evid. 502 Advisory Comm. Notes (describing factors a court may consider in evaluating

5    whether an inadvertent disclosure waives privilege or protection, including "the reasonableness of

6    precautions taken" and "the number of documents to be reviewed and the time constraints for

7    production.").  In the absence of any information at all about Defendant's efforts to identify and

8    protect privileged materials, Defendant has not demonstrated that it took reasonable steps in order

9    to prevent inadvertent disclosure.

10           As to the third factor, Defendant asserts that it acted "promptly" to request clawback of the

11   documents, notifying Plaintiff nine business days after discovering its inadvertent production.  In

12   light of Defendant's failure to establish that it "took reasonable steps to prevent disclosure" of

13   privileged or protected information, the court need not decide whether Defendant's nine-day delay

14   before requesting clawback was reasonable.  However, the court notes that numerous courts have

15   held that "once a party realizes a document has been accidentally produced, it must assert privilege

16   with virtual immediacy."  *Sikorsky Aircraft Corp. v. United States*, 106 Fed. Cl. 571, 585 (Fed. Cl.

17   2012) (citing cases in which failure to assert privilege within periods ranging from six days to six

18   months weighed in favor of waiver); *see also Mycone Dental Supply Co. Inc. v. Creative Nail*

19   *Design Inc.*, No. C-12-00747-RS (DMR), 2013 WL 4758053, at *3 (N.D. Cal. Sept. 4, 2013)

20   (collecting cases).  Since Defendant has failed to establish that its production of the June 2015

21   email chain did not constitute a waiver of the attorney-client privilege, the June 2015 email chain

22   is not protected by the attorney-client privilege.[6]

23           In sum, the court concludes that Defendant has failed to establish that the three documents

24   inadvertently produced to Plaintiff fall within the protections of the deliberative process privilege.

25   Further, Defendant waived the attorney-client privilege as to emails in the June 2015 email chain

26

27   _____
     [6] Based on the court's finding of waiver, it need not address whether the June 2015 email chain is
28   also protected by the work product doctrine, since any such protection was also waived by
     Defendant's disclosure of the emails to Plaintiff.

United States District Court
Northern District of California

1   for which it claimed privilege.  Defendant's motion for clawback is therefore denied.[7]

2   **III.      CONCLUSION**

3          For the foregoing reasons, Defendant's motion for clawback is denied.

4

5          **IT IS SO ORDERED.**

6   Dated: January 3, 2017

7

8                                               Donna M. Ryu
                                                United States Magistrate Judge
9

10



11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

_____

28   [7] Because the court did not rely on any of the exhibits submitted with Plaintiff's administrative motion to supplement the record, the administrative motion is denied as moot.